**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-60530-BLOOM/Augustin-Birch**

SUTTON NATIONAL INSURANCE COMPANY,

    Plaintiff,

v.

ANTONIETTE SCARDA,

    Defendant.

_____/

ANTONIETTE SCARDA,

      Third-Party Plaintiff,

v.

CSI OF SUFFOLK, INC.,

    Third-Party Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Third-Party Defendant CSI of Suffolk, Inc.'s ("CSI") Motion to Dismiss Third-Party Plaintiff's Complaint ("Motion"), ECF No. [42]. Third-Party Plaintiff Antionette Scarda ("Scarda") filed a Response in Opposition ("Response"), ECF No. [45], to which CSI filed a Reply, ECF No. [46]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, CSI's Motion is granted.

## I.    BACKGROUND

This case arises from the sinking of a vessel owned by Scarda. Scarda submitted a claim for the loss under a maritime insurance policy with Sutton National Insurance Company

("Sutton"). Sutton filed a Complaint for Declaratory Relief, ECF No. [1], seeking a declaratory judgment that it does not owe Scarda insurance coverage under the marine insurance contract. ECF No. [1]. In her Answer and Affirmative Defenses, Scarda asserted a Counterclaim for Breach of Contract. ECF No. [12]. Thereafter, Scarda filed a Third-Party Complaint against CSI, ECF No. [32], asserting four Counts: Count I asserts a Professional Negligence (GPS Tracking System Warranty) claim; Count II asserts a Professional Negligence (Underinsurance) claim; Count III asserts a Breach of Fiduciary Duty (GPS Tracking System Warranty) claim; and Count IV asserts a Breach of Fiduciary Duty (Underinsurance) claim. *Id.*

Scarda alleges she is a citizen of New York and the owner of a 2024 45' Streamline yacht, Hull ID No. SLB45009A324, which she purchased for $1.7 million. *Id.* at ¶ 5, 13. On November 27, 2024, while on a return voyage to Fort Lauderdale, Florida, Scarda's yacht caught on fire and ultimately sank. *Id.* at ¶ 14. Scarda had purchased a "Recreational Yacht Insurance Policy from Sutton for the Policy Period of April 22, 2024, through April 22, 2025." *Id.* at ¶ 6. The policy had a maximum coverage amount for losses to the boat of $1,000,000. *Id.* at ¶ 7. The policy also included a warranty stating: "The insured vessel is equipped with a monitored GPS vessel tracking security system. The monitoring account must always be active and functional." *Id.* at ¶ 8. Sutton, believing it did not owe coverage under the policy due to Scarda's alleged breach of this GPS warranty, filed this action seeking a declaratory judgment that it is not obligated to cover the loss of the boat under the policy. *Id.* at ¶ 16.

CSI is a New York corporation with its principal place of business in St. James, New York. *Id.* at ¶ 2. "CSI is a licensed insurance agency in the state of Florida[,]" and it "[procures] insurance policies for its clients in the state of Florida." *Id.* Scarda hired CSI, which "acted as Scarda's broker for purposes of procuring insurance coverage for the Boat." *Id.* at ¶ 9. Scarda asked Christopher

2

Schephis, a broker and executive officer of CSI, "whether the Boat needed a security system like GOST to obtain insurance." *Id.* at ¶ 11. When told that the boat had an Automatic Identification System (AIS), Schephis responded "That's perfect, all you need." *Id.*

Scarda alleges she relied on Schephis's statements and thus "equipped the Boat with a Raymarine AIS transreceiver[,] a Streamline EPIRB (Emergency Position Indicating Radio Beacon), and an Apple AirTag that was placed in the casing of the EPIRB." *Id.* at ¶ 12. Sutton investigated the claim and maintains that "it is not obligated to provide coverage for the loss of the Boat because it contends that Scarda did not comply with the GPS tracking system Warranty in the Policy." *Id.* at ¶ 16. Scarda alleges that "[i]f it is ultimately adjudged that the Policy does not provide coverage for the subject incident, then CSI breached its duties owed to Scarda and would be liable to Scarda for the loss of the Boat and other damages." *Id.* at ¶ 18.

In Count I, Scarda claims that "CSI had a duty to properly advise Scarda of the requirements of the GPS tracking system warranty . . . and to confirm with Sutton that the AIS satisfied the GPS warranty in the Policy so as to ensure that Scarda would receive a valid and binding insurance policy." *Id.* at ¶ 24. She claims that "[i]f it is ultimately adjudged that the Policy does not provide coverage to Scarda for the loss of the Boat, then CSI . . . breached its duties." *Id.* at ¶ 26.

Count II alleges that CSI negligently underinsured the boat. *Id.* at ¶¶ 28–33. Scarda claims that "CSI had a duty to properly advise Scarda regarding the appropriate limits of coverage and to otherwise ensure that the Boat was not underinsured." *Id.* at ¶ 31. According to Scarda, CSI allegedly breached these duties because it "procured a Policy providing $1 million in coverage" despite knowing Scarda had recently purchased the boat for $1.7 million, and because "CSI also

failed to take the necessary steps to increase the limits of coverage for the Boat, as requested by Scarda, before the Boat sank." *Id.* at ¶ 32.

In Count III, Scarda alleges that because of "CSI's representations . . . and in light of [their] ongoing relationship," CSI owed Scarda fiduciary duties to "(1) fully and properly advise Scarda of the requirements of the GPS tracking system warranty under the Policy; (2) not misrepresent facts concerning the requirements of the GPS tracking system warranty under the Policy; (3) confirm with Sutton that the AIS satisfied the GPS tracking system warranty before representing same to Scarda and before procuring the Policy for Scarda; and (4) protect Scarda's interests with respect to the insurance policy." *Id.* at ¶ 40. Scarda asserts that "[i]f it is ultimately adjudged that the Policy does not provide coverage to Scarda for the loss of the Boat, then CSI . . . breached these fiduciary duties." *Id.* at ¶ 41.

Lastly, Count IV alleges that because of "CSI's representations . . . and in light of [their] ongoing relationship," CSI owed Scarda a fiduciary duty to "fully and properly advise Scarda regarding the appropriate limits of coverage and otherwise ensure that the Boat was not underinsured," and to "protect Scarda's interests with respect to the insurance policy." *Id.* at ¶ 49. Scarda claims that CSI breached these fiduciary duties because it knew that Scarda had recently purchased the boat for $1.7 million and "only procured a Policy providing $1 million in coverage for a total loss of the Boat," and because "CSI also failed to take the necessary steps to increase the limits of coverage for the Boat, as requested by Scarda, before the Boat sank." *Id.* at ¶ 50.

CSI now moves to dismiss these claims arguing that Scarda lacks standing and the claims are not ripe for review. ECF No. [42] at 9, 11. CSI also argues that the claims must be dismissed because they are improperly joined under Rule 14 and that Scarda fails to properly state a claim. *Id.* at 14, 17. Scarda responds that she has standing to bring the claims against CSI, and the claims

4

are ripe for review. ECF No. [45] at 4. Moreover, she contends her claims are proper under Federal Rule of Civil Procedure 14 and that her Third-Party Complaint properly states claims against CSI for professional negligence and breach of fiduciary duty. *Id*. at 8, 11.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). While a court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, a court is generally limited to the facts contained in the complaint and attached exhibits. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).

### III.     DISCUSSION

The Court first addresses whether Scarda has standing to bring her claims.

### A.       Scarda's Standing

Federal courts are limited in their exercise of judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). The standing doctrine is "rooted in the traditional understanding of a case or controversy." *Spokeo*, 578 U.S. at 337. Standing "present[s] the threshold jurisdictional question of whether a court may consider the merits of a dispute." *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). Thus, when a plaintiff lacks standing "a court is not free to opine in an advisory capacity about the merits" of her claim. *Id.* (quoting *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005)). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338; *see id.* at 1205.

A plaintiff suffers an injury in fact when she "demonstrates a harm that is '(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.' " *Elend*, 471 F.3d at 1207. Importantly, standing often overlaps with the ripeness doctrine—namely, "the first element [of standing], injury in fact, [] most often converges with ripeness." *Id.* at 1205 (explaining that if an action "is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing").

CSI argues that Scarda lacks standing to bring her professional negligence and breach of fiduciary duty claims related to the GPS warranty (Counts I and III) because her alleged injury is "largely . . . conjectural and hypothetical," as it is based on the declaratory judgment's coverage finding that "has not yet materialized." ECF No. [42] at 10-11. Notably, CSI does not challenge Scarda's standing to bring the professional negligence and breach of fiduciary duty claims in

Counts II and IV. Scarda responds that her claims are not hypothetical because Sutton "denied coverage . . . on the basis that Scarda allegedly failed to comply with the Warranty in the Policy." ECF No. [45] at 7.

The Court finds that Scarda lacks standing to bring the claims in Count I and Count III of her Third Party Complaint because she has not alleged an injury in fact. First, Scarda asserts her claims contingently. That is, Scarda alleges that "*if* it is ultimately adjudged [in the declaratory judgment action] that the Policy does not provide coverage . . . *then* CSI . . . breached its duties" and was negligent, and it breached the fiduciary duties it owed Scarda. ECF No. [32] at ¶ 26-27, 41-42 (emphasis added). In so doing, Scarda concedes that she has not actually suffered this alleged injury and that it is not imminent, as she herself disagrees and disputes Sutton's denial based on noncompliance with the GPS warranty. Further, if the Court adjudicated these claims but found that Sutton indeed owed Scarda coverage under the policy, then any decision issued by this Court would be "render[ed] wholly advisory" because Scarda would not have suffered any injury in connection with her compliance (or lack thereof) with the GPS warranty in the policy. *See Elend*, 471 F.3d at 1209.

### B.  Ripeness of Claims

"Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Props., Inc. v. City of Plantation*, 121 F. 3d 586, 589 (11th Cir. 1997); *see Aspen Am. Ins. Co. v. Wynn*, No. 19-23643-CIV, 2021 WL 412348, at *4 (S.D. Fla. Feb. 4, 2021). "'A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Nat'l Parks Conservation Ass'n v. U.S. Dept. of Interior,* 46 F. Supp. 3d 1254, 1267 (M.D. Fla. 2014) (quoting *Texas v. United States,* 523 U.S. 296, 300 (1998)). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their

resources through the review of potential or abstract disputes." *Digital Props.*, 121 F.3d at 589 (11th Cir. 1997). Thus, the ripeness inquiry "addresses the 'timing of the suit.' " *See Watkins v. Ramirez*, No. 13-62448-CIV-BLOOM/VALLE, 2015 WL 5118365, at *7 (S.D. Fla. Aug. 31, 2015) (quoting *Elend v. Basham,* 471 F.3d 1199, 1205 (11th Cir. 2006)).

"To determine whether a claim is ripe, [a court must] assess both the *fitness* of the issues for judicial decision and the *hardship* to the parties of withholding judicial review." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010) (emphasis in original) (citing *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1315 (11th Cir. 2000)). The fitness prong concerns the claim's " 'finality, definiteness, and the extent to which resolution of the [claim] depends upon facts that may not yet be sufficiently developed[,]' " while the hardship prong is generally concerned with the potential costs of withholding judicial review. *See Harrell*, 608 F.3d at 1258 (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.,* 45 F.3d 530, 535 (1st Cir.1995)).

CSI argues that Scarda's claims are not ripe because the claims "are contingent upon the occurrence of an event that may or may not occur," and "Scarda's alleged injury is largely based on a hypothetical declaratory judgment coverage finding that has not yet materialized." ECF No. [42] at 10, 19. Scarda responds that "irrespective of whether Scarda prevails against Sutton on the issue of coverage for the subject incident, Scarda has suffered actual monetary damages because CSI insured the Boat for substantially less than it was worth at the time it sank." ECF No. [45] at 5. Scarda fails to address CSI's argument that the claims are not ripe with respect to claims in Counts I and III.

Scarda's claims in Counts I and III fail to satisfy the fitness prong of the ripeness inquiry. Scarda alleges that "*if* it is ultimately adjudged that the Policy does not provide coverage," as

8

determined in the declaratory judgment action, *then* CSI was negligent in its procurement of the insurance policy, and it breached the fiduciary duties it owed Scarda. ECF No. [32] at ¶ 26-27, 41-42. Here, Scarda, much like the third-party plaintiff in *Aspen*, "may never have a claim against [CSI] because any cause of action is entirely contingent on whether [Scarda has] coverage for [her] loss under the insurance policy. *Aspen*, 2021 WL 412348, at *3; *see also Evanston Ins. Co. v. Price4Limos, LLC*, No. 13-14177-CIV-MARTINEZ, 2015 WL 11251884, at *4-5 (S.D. Fla. June 11, 2015) (finding that the claims for negligent procurement of the policy against the insurance agent are "contingent on the outcome of the [underlying] litigation" and dismissing those claims without prejudice because they "may never ripen"); *Thomas Mach., Inc. v. Everest Nat'l Ins. Co.*, No. 20-60459-CIV, 2020 WL 2616193, at *7 (S.D. Fla. May 22, 2020) (dismissing as not ripe claims against an insurance agent while the policy coverage determination was still pending because these claims "may never ripen").

Scarda principally relies on one district court decision, *Great Lakes Reinsurance (UK) PLC v. Roca*, No. 07-23322-CIV, 2008 WL 11409058 (S.D. Fla. Dec. 11, 2008), to support her position that her claims are ripe. That position is not consistent with other decisions in this district, nor is it persuasive. In *Roca*, the third-party defendants moved to dismiss the claims brought against them on ripeness grounds because the coverage action between the plaintiff insurance company and defendants insureds was not final. *Id.* at *1. The *Roca* court denied the motion reasoning that "the dispute between the Rocas and the [third-party defendant] Brokers is not hypothetical" and "[d]ismissing or staying the third-party claims would surely cause hardship to the Rocas as it would force them to maintain two separate lawsuits." *Id.* at *2-3. However, as the court in *Witkin Design* (a decision issued eight years after *Roca*) stated, "the trend in this District has been to dismiss the premature claims against insurance agents without prejudice." *Witkin Design Grp., Inc. v.*

9

*Travelers Prop. Cas. Co. of Am.*, 2016 WL 1572964, at *3 (S.D. Fla. Apr. 18, 2016) (citing *Evanston Ins. Co.*, 2015 WL 11251884, at *4-5 and collecting cases holding the same). Scarda "never grapple[s] with the decisions that undercut [her] position and that support dismissal of [her] claims]" and the reason for the trend in these decisions is "is well-understood because, '[l]ike the insureds in the long line of cases dismissing insurance agents as premature, [Scarda] has no present claim against [CSI]." *Aspen*, 2021 WL 412348, at *3 (quoting *Thomas Mach., Inc.*, 2020 WL 2616193, at *6).

In contrast, Scarda's professional negligence and breach of fiduciary duty claims in Counts II and IV satisfy the fitness prong of the ripeness inquiry. There are no "future events that may not occur as anticipated" that would affect these claims against CSI. *See Nat'l Parks Conservation*, 46 F. Supp. 3d at 1267. The underlying allegations that support this claim have already occurred, namely, that CSI allegedly "failed to take the necessary steps to increase the limits of coverage for the Boat" as requested by Scarda, and that this alleged failure resulted in a breach of fiduciary duty or professional negligence by CSI. *See* ECF No. [32] ¶ 32-33, 50-51. Moreover, because Scarda's claims in Counts II and IV do not depend on the occurrence of any future events, she would suffer hardship if she were precluded from recovering on those claims if the Court withheld judicial review. *See Harrell*, 608 F.3d at 1258; *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Com'n*, 461 U.S. 190, 201–02, 201 n.13 (1983).

Accordingly, the Court finds that Scarda's professional negligence and breach of fiduciary duty claims relating to the GPS warranty (Counts I and III) are not ripe and must therefore be dismissed, but her professional negligence and breach of fiduciary duty claims relating to underinsurance of the boat (Counts II and IV) are ripe for judicial review. Thus, the Court turns to whether Counts II and IV are properly joined under Rule 14(c).

## C. Whether the remaining claims are properly joined under Rule 14(c)

CSI argues that, because Scarda seeks neither contribution nor indemnification from CSI, the claims are improperly joined under Rule 14. *See* ECF No. [42] at 14-17. It also contends that Scarda's claims are improperly joined because they are not "so related to the [underlying admiralty] claims in the action . . . that they form part of the same case or controversy." ECF No. [46] at 8. Scarda responds that impleader does not require the third-party plaintiff to seek only contribution and indemnification, and that "[t]he third-party claims against CSI are closely related to Sutton's claims against Scarda [because they] involve interpretation of the same policy language, similar underlying facts, and the determination of whether Scarda complied with the GPS tracking system in the Warranty (as represented to Scarda by CSI)." ECF No. [45] at 8, 10.

As a threshold matter, Rule 14(c) governs third-party practice when "a plaintiff asserts an admiralty or maritime claim under Rule 9(h)." Fed. R. Civ. P. 14(c). Here, Plaintiff Sutton asserts an admiralty or maritime claim under Rule 9(h), and thus, the Court must apply subsection 14(c). *See* ECF No. [1]; Fed. R. Civ. P. 14(c).

First, the Eleventh Circuit has rejected CSI's argument that Scarda's claims are improperly joined because she does not seek contribution or indemnification from CSI. *See Cincinnati Specialty Underwriters Ins. Co. v. Code 3 Sec. & Prot. Services, Inc*, No. 8:16-CV-127-T-30TBM, 2016 WL 2759152, at *1 (M.D. Fla. May 12, 2016) (stating "third-party negligence actions against insurance agents in a declaratory judgment action filed by the insurer are viewed as *precisely* the kind of dependent claim Rule 14 should govern") (emphasis added). This approach is mirrored by federal courts across the country. *See Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566, 570 (S.D.N.Y. 1983) (allowing impleader of breach of fiduciary duty claim against an insurance broker in a declaratory judgment action by insurance company against the insured); *Country Mut. Ins. Co. v. Rocky Mountain Const. Co., LLC*, No. 12-CV-00453-REB-KMT, 2013 WL 438940, at *3 (D.

Colo. Feb. 5, 2013) (collecting cases and holding the same); *Atl. Specialty Ins. Co. v. Bindea*, 656 F. Supp. 3d 624, 638 (W.D. Va. 2023) (holding impleader in maritime declaratory judgment actions is proper under Rule 14(c)).

Rule 14(c) provides that "the defendant . . . may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 14(c). "Impleader, or third party practice, is only available when the third party defendant's liability is secondary to, or a derivative of, the original defendant's liability on the original plaintiff's claim." *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982); *cf. United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987) (holding that third-party practice "does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim."). Rule 14(c)'s purpose is to "accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity for trying several related claims in different lawsuits." *All Underwriters Subscribing to Leed Yacht Policy of Ins. No. B080120869M18 v. Fishing Headquarters, Inc.*, No. 19-63077-CIV, 2020 WL 10055364, at *6 (S.D. Fla. Sept. 18, 2020) (citing *Gruner + Jahr USA Publ'g v. Publishers Communications Sys., Inc.*, 2006 WL 8432269, at *2 (S.D. Fla. Aug. 3, 2006)).

Scarda's claims in Counts II and IV are not "secondary" or "derivative" to Sutton's claim in the declaratory judgment action. Scarda herself states as much "[r]*egardless* of how the Court rules on whether Scarda complied with the Warranty, Scarda *still* would have claims against CSI for procuring a Policy that provided only $1 million in coverage for the total loss of a $1.7 million boat." ECF No. [45] at 2 (emphasis added). And, again, one does not have to take Scarda's word

for it that these claims are "separate and independent." *Olavarrieta*, 812 F.2d at 643. Indeed, "[w]hether [Scarda] is entitled to any relief on [these] claim[s] is wholly independent of [her] liability" to Sutton in the declaratory judgment action. *Id.* As such, the claims in Counts II and IV are improperly before the Court and must be dismissed.

Rule 14(c) further requires that the third-party defendant be liable "on account of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 14(c). In determining whether the requirements of Rule 14(c) are met, courts are generally flexible. *See In the Matter of Suntex Marina Inv'rs, LLC*, No. 219CV00080SPCMRM, 2021 WL 397357, at *4–5 (M.D. Fla. Jan. 19, 2021), *report and recommendation adopted sub nom. Suntex Marina Inv'rs, LLC*, No. 219CV00080SPCMRM, 2021 WL 391331 (M.D. Fla. Feb. 4, 2021). For instance, in *Suntex Marina*, the plaintiff was injured when she fell off a boat owned by the defendants. *Id.* at *1. The boat owner sought to implead t-e individuals and the entity that signed the vessel's rental contract and operated the boat from which the plaintiff fell. *Id.* at *1, *5–6. The court held that impleader was proper and reasoned that the third-party plaintiffs "[sought] to implead third parties that they allege are the actual and proximate cause of Claimant's injuries." *Id.* at *5–6. Because "the proposed third parties signed the rental contract and operated the vessel[,]" the third-party plaintiffs alleged that the third parties could be "liable in part or in full for the accident." *Id.* at *5.

Looking at the nature of the suit and the circumstances surrounding them, Scarda's claims in Counts II and IV are wholly independent of the underlying declaratory judgment action, and they run afoul of this same transaction or occurrence requirement. There is no overlap between the factual or legal issues in the claims relating to the underinsurance of the boat—namely, what coverage was requested and in what amount, whether CSI failed to procure it, and whether Scarda properly requested it—and the declaratory judgment action which turns on the meaning and

13

potential breach of the GPS warranty. *See Suntex Marina* 2021 WL 397357, at \*5–6. Unlike the impleaded third parties in *Suntex Marina*, here, CSI's relevant conduct in *underinsuring* the Boat could in no way be "the actual and proximate cause" of the breach alleged in the declaratory judgment action—the breach of the GPS warranty. *See id.* Thus, Counts II and IV are not properly joined under Rule 14(c) and must be dismissed.

### D.       Whether Scarda has sufficiently stated a claim

The parties also disagree as to whether New York or Florida law applies to the claims for accrual and justiciability purposes. For one, CSI argues that "Florida law should apply because the alleged professional negligence injury causing the damages Scarda seeks to recover occurred in Florida, and Scarda herself relies on Florida law." On the other hand, Scarda submits that New York law should apply because "CSI is a New York corporation with its principal place of business in New York; Scarda resides in New York; and the Boat was primarily moored in New York as reflected in the Policy." However, the Court need not decide which substantive law applies for the accrual of the claims to determine whether Scarda has sufficiently stated a claim. Scarda's claims in Count I and III are not justiciable and her claims in Count II and IV are not properly joined under Rule 14(c). As such, each of Scarda's claims are improperly before this Court and must be dismissed. [1]

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Third-Party Defendant CSI's Motion to Dismiss the Third-Party Complaint**, ECF No. [42]**, is **GRANTED.**

---

[1] The Court also need not consider the parties' arguments pertaining to supplemental jurisdiction over Scarda's claims. Whether the Court should exercise supplemental jurisdiction over Scarda's otherwise proper claims is not a question before the Court because none of Scarda's claims meet the requirements of standing, ripeness, and Rule 14(c).

2. The Third-Party Complaint, **ECF No. [32]**, is **DISMISSED WITHOUT PREJUDICE.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 30, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

15